IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHOUPIETE CASSEUS,
    Plaintiff,

vs.                                    Case No.: 5:08cv378/SPM/EMT

N.B. GILO, et al,
    Defendants.
_____/

## ORDER

    Plaintiff, a prisoner proceeding pro se, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983 (Doc. 1). Leave to proceed in forma pauperis has been granted (Doc. 5).

    From a review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to some of the named Defendants. Therefore, the court will allow Plaintiff an opportunity to clarify his allegations in an amended complaint.

    Plaintiff names five Defendants in this action: N.B. Gilo, the Chief Health Officer at Gulf Correctional Institution ("Gulf CI"); P. Sexton, an Advanced Registered Nurse Practitioner at Gulf CI; Riley, Senior Registered Nurse at Gulf CI; R.P. Tifft, warden at Gulf CI; and Walter McNeil, Secretary of the Florida Department of Corrections ("DOC") (Doc. 1 at 1–2). Plaintiff claims that through their deliberate indifference to his medical needs Defendants have violated Plaintiff's rights under the Eighth Amendment (cruel and unusual punishment) and the Fourteenth Amendment (due process) (*id.* at 7).

    Plaintiff alleges the following facts in support of his claims. In or around February 2005, Plaintiff attended sick call, suffering from a pilonidal cyst.[1] The cyst was causing Plaintiff severe pain coupled with a puss-like discharge, swelling, muscle ache, back pain, chills, and fever. Plaintiff

---

[1] All facts in this order are derived from the Statement of Facts section of Plaintiff's complaint (Doc. 1 at 5–6C).

was seen by Defendant Riley, but Plaintiff claims Defendant Riley misrepresented his (Plaintiff's) answers on the medical condition assessment questionnaire on several occasions between February 2005 and May 2008. Specifically, when asked about Plaintiff's symptoms, Defendant Riley failed to acknowledge or record them. Plaintiff also states that most of the time Defendant Riley simply dismissed Plaintiff's complaints, claiming that Plaintiff's condition was caused by poor hygiene. Plaintiff asserts that it was not until his cyst became infected and he was suffering unbearable back pain that Defendant Riley referred him to a physician. Plaintiff states that Defendant Riley's deliberate indifference to his serious medical needs and wanton infliction of pain served no penological purpose.

Plaintiff was seen and evaluated by Defendant Sexton approximately three times between 2005 and 2008. Plaintiff alleges that on each occasion, his cyst was inflected, swollen, and discharging puss, and Plaintiff's back pain was so severe he could hardly walk straight. In February 2007, Defendant Sexton prescribed Bactrim, an antibiotic, for fifteen days but refused to prescribe a painkiller. The cyst healed partially. Again in September 2007, Defendant Sexton prescribed Bactrim. However, this time the medication caused an allergic reaction that caused swelling and burns. Therefore, Plaintiff was taken off Bactrim.

Plaintiff alleges that he has seen Defendant Riley since September 2007, but his complaints have been dismissed by Defendant Riley with comments such as, "this is happening because of your poor hygiene," "stop masturbating," and "there is nothing we can do for you." Plaintiff further alleges that on May 13, 2008, he went to sick call for the last time due to back pain, groin pain, testicular pain, a skin rash, and itching, conditions he believes were caused by the infected cyst. However, Defendant Riley dismissed Plaintiff without providing any treatment or referring him to a physician. Plaintiff asserts that he still suffers from aliments consistent with an infected pilonidal cyst for which he has not received further treatment.

On May 20, 2008, Plaintiff filed an informal grievance against Defendant Riley; however, it was denied by the Gulf CI Senior Health Services Administrator. On June 5, 2008, Plaintiff filed a formal grievance against Defendants Riley and Sexton. On June 20, 2008, Defendants Gilo and Tifft denied Plaintiff's grievance. On July 10, 2008, Plaintiff filed another formal grievance which

was again denied by Defendants Tifft and Gilo. On August 13, 2008, Plaintiff appealed to Defendant McNeil, but the appeal was denied on September 26, 2008.

As relief, Plaintiff seeks 1) an order declaring that Defendants' actions violated Plaintiff's Eighth and Fourteenth Amendment rights; 2) referral to a specialist for appropriate treatment of his pilonidal cyst; 3) general damages in an unspecified amount; 4) punitive damages in an unspecified amount; 5) trial on all issues triable by jury; 6) costs associated with this suit; and 7) such other relief as the court deems appropriate (Doc. 1 at 7).

Initially, Plaintiff has failed to state a constitutional claim of inadequate medical treatment. Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. *Id*. (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)). Similarly, a difference in medical opinion between the medical staff and an inmate as to the inmate's diagnosis or course of medical treatment does not support a claim of cruel and unusual punishment. *Id*. (citations omitted). Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000), *cert. denied*, 531 U.S. 1077, 121 S.Ct. 774, 148 L.Ed.2d 673 (2001). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. *Id.* at 1258. As to the objective prong, an objectively serious deprivation requires a showing of an objectively "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *see* Farmer, 511 U.S. at 834, 114 S.Ct. at 1977 (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires a showing that the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105-06, 97 S.Ct. at 291–92 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105, 97 S.Ct. at 291. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")). "Deliberate indifference" and "mere negligence" are not one and the same. Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris v. Thigpen, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

In the instant case, Plaintiff does not allege a complete denial of medical care; rather, he questions the adequacy of the care received. Plaintiff admits he was able to see medical personnel upon request and received antibiotics for his condition. Defendants Riley and Sexton apparently

believed that Plaintiff's condition did not warrant any additional treatment or follow-up examination(s). Plaintiff, however, disagrees with the medical judgment of Defendants Riley and Sexton. The fact that the opinions of Defendants Riley and Sexton differ from Plaintiff's opinion, does not support a claim of cruel and unusual punishment. *See* Harris, 941 F.2d at 1507 (where treatment has been received and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of medical judgments ). Therefore, unless additional facts exist and are alleged, Plaintiff's Eighth Amendment claim appears subject to dismissal.[2]

Additionally, Plaintiff has failed to state a claim against Defendants McNeil, Gilo, and Tifft as Plaintiff apparently seeks to hold them liable on a respondeat superior theory of liability. It is well established that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S.Ct. 1974, 146 L.Ed.2d 804 (2000).

---

[2] To the extent Plaintiff contends Defendants' conduct violates the Due Process Clause of the Fourteenth Amendment, in addition to the Eighth Amendment, he cannot state a due process violation. If a constitutional claim is covered by a specific constitutional provision, such as the Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *See* County of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S. Ct. 1708, 1715, 140 L. Ed. 2d 1043 (1998) (citations omitted). Thus, substantive due process analysis is inappropriate if Plaintiff's claims are covered by another constitutional amendment. *Id*. In the instant case, Plaintiff's claims are covered by the Eighth Amendment; therefore, his due process claim is subject to dismissal.

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff does not allege that Defendants McNeil, Gilo, and Tifft personally participated in the alleged unconstitutional conduct; his only allegation concerning them is that they denied Plaintiff's grievances and/or appeals concerning the conduct of Defendants Riley and Sexton. Plaintiff does not allege that they directed any subordinate to act unlawfully or knew that a subordinate would act unlawfully and failed to stop the subordinate from doing so. Nor does Plaintiff allege the existence of a history of widespread inadequate medical care that put these Defendants on notice of the need to correct the alleged deprivation, and they failed to do so. Likewise, Plaintiff does not allege the existence of a custom or policy of the DOC or Gulf CI that resulted in deliberate indifference to Plaintiff's constitutional rights. Therefore, Plaintiff should drop Defendants McNeil, Gilo, and Tifft from this action unless additional facts exists and are alleged to support claims against them.

Lastly, Plaintiff is advised that the submission of exhibits is unnecessary at this time; therefore, Plaintiff need not attach copies of grievances to the amended complaint.[3] Plaintiff should not rely on other documents to explain his allegations or to state his claims. He should use the complaint form completely set out the facts. Plaintiff will be advised when, prior to trial or in conjunction with a motion for summary judgment, the submission of evidence in support of his claim is appropriate.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action. If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal. If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Amended Complaint**." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint. Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded. Local Rule 15.1, Northern District of Florida.

Accordingly, it is **ORDERED**:

1.	The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983. This case number should be written on the form.

2.	Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written and submitted on the

---

[3] Although Plaintiff is required to have exhausted his administrative remedies prior to filing suit, he is not required to attach grievances to the complaint to establish that his administrative remedies have been exhausted.

Case No: 5:08cv378/SPM/EMT

court form.  In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

      3.      Failure to comply with this order may result in dismissal of this action.

**DONE AND ORDERED** this  1st  day of July 2009.

                      */s/ Elizabeth M. Timothy*
                      **ELIZABETH M. TIMOTHY**
                      **UNITED STATES MAGISTRATE JUDGE**